UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

BOBBIE H.,

               Plaintiff,

    v.

COMMISSIONER OF SOCIAL SECURITY,

               Defendant.

CASE NO. 3:25-CV-5254-DWC

ORDER RE: SOCIAL SECURITY DISABILITY APPEAL

Plaintiff filed this action, pursuant to 42 U.S.C. § 405(g), for judicial review of the denial of her application for Disability Insurance Benefits (DIB). Pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, and Local Rule MJR 13, the parties have consented to proceed before the undersigned. After considering the record, the Court finds no reversible error and affirms the Commissioner's decision to deny benefits.

## I.  BACKGROUND

Plaintiff applied for DIB on May 11, 2021. Administrative Record (AR) 18. Her alleged date of disability onset is May 2, 2018. *Id.* An Administrative Law Judge (ALJ) held hearings on Plaintiff's claim on July 6, 2023 (AR 44–54), and February 13, 2024 (AR 55–97). On March 4,

ORDER RE: SOCIAL SECURITY DISABILITY
APPEAL - 1

2024, the ALJ issued a written decision finding Plaintiff not disabled. AR 15–43. The Appeals Council declined Plaintiff's timely request for review, making the ALJ's decision the final agency action subject to judicial review. AR 1–6. On March 31, 2025, Plaintiff filed a Complaint in this Court seeking judicial review of the ALJ's decision. Dkt. 8.

## II.   STANDARD

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of benefits if, and only if, the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (citing *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)).

## III.   DISCUSSION

In her opening brief, Plaintiff contends the ALJ misassessed the medical evidence (including several medical opinions), her subjective symptom testimony, and the statement of her daughter. Dkt. 15.[1]

**A.   Medical Evidence**

Plaintiff contends the ALJ erred in assessing the medical opinions of Jennifer Drake, NP; Sharon Wallace, NP; and Bruce Eather, PhD.[2] Dkt. 15 at 2–8. Plaintiff also contends the ALJ erred in assessing evidence from her treating source and historical evidence regarding her condition. *Id.* at 2, 6–7.

---

[1] Plaintiff also contends the ALJ's RFC assessment was erroneous because it did not include limitations supported by the evidence she contends was improperly evaluated. Dkt. 15 at 16–17. The Court addresses this argument by considering whether the evidence was improperly discredited and, if so, whether that improper assessment rendered the RFC incomplete. *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175–76 (9th Cir. 2008) (RFC inadequacy based only on other arguments not independent basis for remand).

[2] Plaintiff also discusses the medical opinion of Dr. Dula but states "the ALJ properly rejected" it. Dkt. 15 at 8. Plaintiff contends the ALJ erred in relying upon Dr. Dula's examination in discounting NP Drake's opinion. *Id.* The Court addresses this argument in its discussion of the ALJ's assessment of NP Drake's opinion.

"A medical opinion is a statement from a medical source about what [a claimant] can still do despite [her] impairment(s) and whether [she] ha[s] one or more impairment-related limitations or restrictions in" her ability to perform work-related demands. 20 C.F.R. § 404.1513(a)(2). For applications, like Plaintiff's, filed after March 27, 2017, ALJs need not "defer or give any specific evidentiary weight, including controlling weight, to" particular medical opinions, including those of treating or examining sources. *See* 20 C.F.R. § 404.1520c(a). Rather, ALJs must consider every medical opinion in the record and evaluate each opinion's persuasiveness, considering each opinion's "supportability" and "consistency," and, under some circumstances, other factors. *Woods v. Kijakazi*, 32 F.4th 785, 791 (9th Cir. 2022); 20 C.F.R. § 404.1520c(b)–(c). Supportability concerns how a medical source supports a medical opinion with relevant evidence, while consistency concerns how a medical opinion is consistent with other evidence from medical and nonmedical sources. 20 C.F.R. §§ 404.1520c(c)(1), (c)(2).

   1. <u>NP Drake</u>

Consultative Examiner NP Drake completed an opinion in July 2022. AR 653–59. She opined Plaintiff could understand, remember, and carry out simple but not complex instructions. AR 658. She opined Plaintiff could not sustain concentration and persist in work-related activity at a reasonable pace and could not interact with coworkers, superiors, and the public and adapt to the usual stresses of the workplace. *Id.*

The ALJ accepted NP Drake's opinion that Plaintiff could perform work involving simple instructions but found NP Drake's opinion otherwise unpersuasive. *See* AR 30–31. The ALJ found NP Drake's other limitations supported by NP Drake's examination, but found that NP Drake's examination was inconsistent with the record as a whole:

> The undersigned has considered this portion of the exam and finds that, while it is largely supported by that examiner's observations and clinical findings [AR 653–

ORDER RE: SOCIAL SECURITY DISABILITY
APPEAL - 3

> 60], it is not consistent with the record as a whole, discussed above. The record shows that the claimant showed no more than mild limitations in concentration at any previous or subsequent exam [AR 573, 574, 732–46, 987–97, 1003], and her capacity to persist or maintain pace was stated to be problematic by other clinicians. The degree of limitation observed was inconsistent with the lack of these limitations in the treatment record (e.g. [AR 730–46] and [AR 522, 524, 527, 530, 532, 533, 535, 538, 632, 637, 642, 675, 1220, 1223, 1225, 1227, 1229, 1231, 1234]). The difficulties opined from the results of testing by NP Drake were also inconsistent with the claimant's demonstrated abilities to Dr. Dula and NP Wallace. While the undersigned finds that the evidence shows the claimant is limited to simple instructions, with a break every 2 hours and limited distractive interaction, the undersigned finds insufficient evidence in the record as a whole that her capacity to sustain concentration and persist in work-related activity at a reasonable pace was otherwise limited to any significant degree. The undersigned also finds the social limitations possibly adequately supported by the claimant's tearful and anxious presentation at this consultative examination, but finds that presentation inconsistent with her presentation at the previous consultative medical examination [AR 570–74] as well as in the record as a whole, where she was only rarely found to be tearful or anxious on exam (*e.g.*, [AR 548, 1003]). The claimant's presentation at the evaluation with NP Drake did not reflect her usual functioning. *See e.g.*, [AR 522, 524, 527, 530, 532, 533, 535, 538, 632, 637, 642, 675, 730–36, 1220, 1223, 1225, 1227, 1229, 1231, 1234]. The difficulties opined from the results of mental health testing by NP Drake are inconsistent with the demonstrated abilities on other consultative examinations. *See* [AR 570–75, 998–1005]. Finding this portion of NP Drake's opinion inconsistent with the record as a whole, the undersigned finds it unpersuasive.

AR 31.

Mental status examinations done at appointments for Plaintiff's physical conditions (AR 522, 524, 527, 530, 532, 533, 535, 538, 632, 637, 642, 675, 730–36, 1220, 1223, 1225, 1227, 1229, 1231, 1234) revealed a normal mood, affect, and orientation, and noted no other abnormalities. Mental status examinations performed in Plaintiff's psychotherapy appointments (AR 732–46, 987–97) revealed the same, along with "normal recent and remote memory, normal attention span and concentration ability." Finally, Dr. Dula's consultative examination found normal concentration, memory, task performance, and mood (AR 573–74), while NP Wallace's noted only "mild" impairments in attention and concentration and that Plaintiff was tearful at times (AR 1003).

ORDER RE: SOCIAL SECURITY DISABILITY APPEAL - 4

This was a proper basis on which to reject the opinion. *See Ford v. Saul*, 950 F.3d 1141, 1156 (9th Cir. 2020) (finding normal mental status examinations inconsistent with opinions proper basis on which to reject the opinions); *see also Bayliss*, 427 F.3d at 1216 (discrepancy with medical evidence "is a clear and convincing reason for not relying on the doctor's opinion"). The ALJ reasonably concluded that the deficits in concentration, attention, and task performance noted by NP Drake were not reflective of Plaintiff's functioning, and reasonably found the evidence of record inconsistent with NP Drake's opinion that Plaintiff could not concentrate or persist in work-related tasks. Similarly, the ALJ reasonably concluded that Plaintiff's "usual functioning" was inconsistent with limitations based on her tearfulness on examination with NP Drake, given that treatment notes almost universally noted her to have a normal mood and affect.

Plaintiff argues the ALJ could not rely upon the medical evidence discussed because "none of the general findings cited by the ALJ are from complete psychological evaluations." Dkt. 15 at 3. It is unclear what constitutes a "complete psychological evaluation," but the results of mental status examinations inconsistent with NP Drake's findings and opinions are substantial evidence to support the ALJ's determination, regardless of whether these evaluations were "complete." The ALJ cited the uniformly normal mental status examinations from Plaintiff's therapy appointments (*see* AR 732–46, 987–97), and the other cited examinations from Plaintiff's appointments related to her physical symptoms are nonetheless relevant in considering her mental abilities. *Cf. Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987) (finding primary care physician competent to provide opinion on a claimant's mental health because "it is well established" such physicians "identify and treat the majority of Americans' psychiatric disorders" and because he provided "clinical observations of [the claimant's] depression").

Plaintiff also argues the ALJ improperly relied upon evidence from the examinations of Dr. Dula. Dkt. 15 at 3–4. Consultative Examiner Dr. Dula had opined Plaintiff had no limitations in her work-related mental abilities based on a largely normal psychological examination. *See* AR 574. The ALJ found some mental limitations were appropriate, and thus found Dr. Dula's opinion only "somewhat persuasive." AR 30. Plaintiff argues the ALJ improperly relied upon the normal examination results from Dr. Dula's examination in discounting NP Drake's opinion because "Dr. Dula's findings are suspect" because Dr. Dula made several purportedly inaccurate observations about Plaintiff's drug use and height. *See* Dkt. 15 at 3–4, 7. As inaccurate observations about drug use and height have no correlation to Dr. Dula's observations with respect to Plaintiff's mental functioning in her examination, they do not render Dr. Dula's examination non-probative as to Plaintiff's functioning.

In sum, the ALJ adequately considered NP Drake's medical opinion.

2. NP Wallace

Consulting examiner NP Wallace completed an opinion in September 2023. AR 999–1005. She opined Plaintiff was limited in the following ways:

> Understand, remember, or apply simple direction and instruction: No limitation. Understand, remember, or apply complex directions and instruction: Mild limitation. Use reason and judgment to make work-related decisions: Mild limitation. Interact adequately with supervisors, co-workers, and the public: Mild limitation. Sustain concentration and perform task at a constant pace: Moderate limitation. Sustain an ordinary routine and regular attendance at work: Moderate limitation. Regulate emotions, control behavior, and maintain well-being: Mild limitation. Maintain personal hygiene and appropriate attire: No limitation. Awareness of normal hazards and taking appropriate precautions: Moderate limitation.

AR 1004-05.

The ALJ found the opinion persuasive, except that he found unpersuasive NP Wallace's opinion that Plaintiff had moderate limitations in sustaining an ordinary routine and regular

ORDER RE: SOCIAL SECURITY DISABILITY APPEAL - 6

attendance at work and in being aware of normal hazards and taking appropriate precautions. *See* AR 31–32.

In Plaintiff's opening brief, she argues only that "the ALJ's residual functional capacity assessment does not fully account for NP Wallace's findings that [Plaintiff] demonstrated restless motor behavior, she had occasional difficulty with word finding and significant brain fog, and she showed an affect that was '[d]epressed, tearful, and crying at times.'" Dkt. 15 at 4. However, the findings identified by Plaintiff are not limitations opined by NP Wallace but, rather, results from her examination of Plaintiff which she then used in reaching the limitations she opined.

In her Reply Brief, Plaintiff argues the RFC does not account for NP Wallace's moderate limitation in maintaining concentration, persistence, and pace. Dkt. 18 at 4. But the RFC accounts for such a limitation by limiting Plaintiff to performing only simple tasks as NP Wallace (and all other medical sources in the record) opined she could. *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1173–74 (9th Cir. 2008) (finding moderate concentration, persistence, pace limitation captured by simple tasks RFC limitation where medical sources opined claimant still could perform simple tasks).[3]

In sum, the ALJ adequately captured the portions of NP Wallace's opinion he found persuasive in the RFC.

---

[3] Plaintiff's Reply Brief raises some challenges to the ALJ's reasons for rejecting NP Wallace's opined limitations in sustaining routine and attendance and being aware of hazards, but Plaintiff failed to raise such arguments in her Opening Brief. *See* Dkt. 15 at 4; Dkt. 18 at 4. The Court will not consider matters that are not "specifically and distinctly" argued in the Plaintiff's Opening brief. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (quoting *Paladin Assocs., Inc. v. Mont. Power Co.*, 328 F.3d 1145, 1164 (9th Cir. 2003)).

3. Dr. Eather

The ALJ found persuasive the medical opinion of nonexamining state agency psychologist Dr. Eather because it was consistent with the evidence of record. AR 29–30. Plaintiff argues this was erroneous because Dr. Eather's opinion was inconsistent with the opinions of NP Drake and NP Wallace. Dkt. 15 at 8. But the fact that an opinion is inconsistent with some of the evidence of record does not require the ALJ discount the opinion, nor does it render the ALJ's assessment of the consistency of that opinion unsupported by substantial evidence. *See Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995) ("[T]he report of a nonexamining, nontreating physician need not be discounted when it is not contradicted by *all other evidence* in the record.") (quotation omitted, emphasis in original). Even so, the Court has found the ALJ adequately considered the opinions of NPs Drake and Wallace, properly discounting the former and finding the latter largely consistent with the RFC.

4. Step Two, Treating Source Evidence, and Other Evidence

Plaintiff also describes some evidence from her treating sources, along with two historical facts about her conditions. Dkt. 15 at 2, 5–7. "[A]n ALJ 'need not discuss *all* evidence presented to her. Rather, she must explain why significant probative evidence has been rejected.'" *Kilpatrick v. Kijakazi*, 35 F.4th 1187, 1193 (9th Cir. 2022) (quoting *Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1394–95 (9th Cir. 1984)).

Plaintiff points to two historical facts—that she received a thyroidectomy in 2013 and was sexually assaulted in 2015—and contends these facts are significant because they "help[] to explain [her] level of impairment since January 2019." Dkt. 15 at 2. These facts do provide important context in understanding Plaintiff's medical history, but they are not significant and probative evidence as to her symptoms and their work-related effects since 2019. Neither fact

inherently necessitates some particular degree of limitation four or six years after the facts occurred; rather, one would expect the extent to which they affected Plaintiff's functioning in 2019 and beyond to be represented in the subsequent medical evidence, which the ALJ considered.

Plaintiff describes a statement submitted by Robin Heflin-Woods, LMHC, which stated Plaintiff was diagnosed with Complex Post-Traumatic Stress Disorder, described a study on childhood abuse and neglect, and then stated, "these types of abuse were primary to [Plaintiff's] experience and could certainly contribute to disability later in life." Dkt. 15 at 7–8; AR 1236. Plaintiff suggests this was a medical opinion (*see* Dkt. 15 at 7–8), but the Court disagrees. To the extent Ms. Heflin-Woods' statement suggested she thought Plaintiff was disabled, this was a statement on an issue reserved to the Commissioner, which the ALJ was not required to consider. *See* 20 C.F.R. § 404.1520b(c)(3)(i). Otherwise, the statement described some general symptoms expected from Plaintiff's impairment but did not opine on Plaintiff's specific abilities and limitations, so it was not a medical opinion. *See* 20 C.F.R. § 404.1513(a)(2).

Plaintiff also describes some other evidence from her treating physicians. *See* Dkt. 15 at 5–7. She argues the evidence shows the ALJ erred in (1) finding her hypothyroidism non-severe, (2) finding her hypersomnia non-severe, and (3) failing to include a limitation related to her need to take daily naps in the RFC. Dkt. 15 at 7. The Court disagrees.

First, with respect to Plaintiff's hypothyroidism, the ALJ found the impairment non-severe because "with short-lived exceptions when her medications needed to be adjusted, the claimant's thyroid condition has been controlled on medications during the period at issue." AR 21. The evidence Plaintiff identifies does not cast doubt upon this conclusion: aside from identifying evidence that she was diagnosed with the condition, the only evidence she identifies

indicating it contributed to her symptoms was a statement that her hyperthyroid "may be causing her current symptoms," such as dizziness and shortness of breath (AR 1234). *See* Dkt. 15 at 6. But that equivocal statement does not suggest Plaintiff's thyroid issues were not subsequently controlled, nor does it corroborate her allegations regarding the extent to which her symptoms impacted her. As will be discussed with respect to Plaintiff's subjective testimony, the ALJ properly discounted her complaints of dizziness.

Second, with respect to Plaintiff's hypersomnia, the ALJ found Plaintiff's sleep-related impairments non-severe because a sleep latency study was normal and a treatment note suggested her fatigue symptoms had non-impairment-related causes (AR 1195), a repeat sleep test described her periodic limb movement as moderate with intermittent movement and no other abnormalities noted (AR 1209), and she reported improvement in her periodic limb movement from medication (AR 1165–66, 1171). *See* AR 23. Plaintiff describes an earlier sleep study noting her periodic limb movement to be severe (AR 1217) and a treatment note reporting Plaintiff described her fatigue as significant (AR 631). Dkt. 15 at 6. The ALJ, however, properly considered this evidence, relying upon the later sleep study which revealed moderate findings with few abnormalities, Plaintiff's reports of improvement after those notes indicating her fatigue was significant, and provider notes suggesting Plaintiff's sleep difficulties were not impairment-related. AR 23.

Third, with respect to Plaintiff's need to take naps, Plaintiff cites to a treatment note which describes her as taking naps during the day. Dkt. 15 at 5 (citing AR 522). In considering Plaintiff's subjective testimony that she had to do the same, the ALJ wrote that "while [Plaintiff] may choose to do this, the medical evidence is inconsistent with the assertion that her impairments require this." AR 28. The evidence Plaintiff cites does not undermine this

conclusion—a treatment note indicating Plaintiff reported taking naps does not show the naps were medically required, and the Court has otherwise found the ALJ properly considered Plaintiff's fatigue-related limitations and sleep-related impairments.

**B.     Subjective Symptom Testimony**

Plaintiff challenges the ALJ's assessment of her subjective symptom testimony. Dkt. 9 at 8–15. Where the ALJ finds Plaintiff has presented evidence of one or more impairments which could be reasonably expected to cause his alleged symptoms and there is no affirmative evidence of malingering, the ALJ must give specific, clear, and convincing reasons for discounting Plaintiff's testimony. *Garrison v. Colvin*, 759 F.3d 995, 1014–15 (9th Cir. 2014) (citing *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)).

The Court finds the ALJ did so by identifying inconsistencies with the medical evidence. "Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony." *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008) (citing *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995)).

With respect to Plaintiff's physical symptoms, Plaintiff testified that her symptoms of dizziness and shortness of breath made it difficult to stand for longer periods of time and that she sometimes experienced back and knee pain. *See* AR 79–80. As noted above, the ALJ did not find Plaintiff had any severe physical impairments, and the Court has found no error with respect to that finding. AR 21–22. With respect to Plaintiff's allegations of back pain, the ALJ noted there was no medically determinable disc or back impairment in the record. *See* AR 21. The ALJ was therefore not required to give specific, clear, and convincing reasons with respect to those allegations. *See Garrison*, 759 F.3d at 1014–15.

ORDER RE: SOCIAL SECURITY DISABILITY
APPEAL - 11

       As for Plaintiff's allegations of dizziness, the ALJ properly rejected those allegations because they were more severe than treatment notes reflected. *See* AR 21. As the ALJ noted, Plaintiff reported her dizziness was triggered by standing up too fast, rather than being triggered by all standing, and indicated the dizziness was without syncope. *See id.* (citing AR 551, 1234). She also denied dizziness to her physical therapist, which the ALJ reasonably found inconsistent with her allegations that her dizziness could impede her ability to stand, walk, or move. *See id.* (citing AR 609). Further, as discussed, the ALJ assessed the impairments that might cause her dizziness, finding them largely controlled, with few indications in the record that they were causing such symptoms. *See* AR 21–22.

       With respect to Plaintiff's mental symptoms, Plaintiff testified that she has difficulties with concentration and memory, has to move slower through work, and easily makes mistakes during her work due to those issues. *See* AR 75, 81. To the extent these allegations were not accounted for by the RFC, which limited Plaintiff to performing work with simple instructions and superficial interaction with the general public, the ALJ reasonably found the medical evidence inconsistent with such allegations. *See* AR 28. As the ALJ noted, and as the Court discussed with respect to the medical opinion evidence, Plaintiff's memory and concentration were generally found to be normal on examination, except for one examination which found those abilities to be mildly impaired. *See id.*

       Plaintiff contends the ALJ's consideration of her subjective testimony is deficient because it provided only an assessment of the medical evidence and asserted it supported his RFC assessment. Dkt. 15 at 9 (citing *Brown-Hunter v. Colvin*, 806 F.3d 487, 489 (9th Cir. 2015). The Court disagrees: in addition to summarizing the medical evidence, the ALJ also summarized Plaintiff's allegations (AR 21, 29) and stated specifically which evidence he found inconsistent

with her allegations (*see* AR 28–29). "The ALJ's explanation for her assessment of [Plaintiff's] testimony was thus more than a single general statement that the claimant's statements are not credible and is sufficient to allow appellate review." *Nadon v. Bisignano*, 145 F.4th 1133, 1137 (9th Cir. 2025) (distinguishing and quoting *Brown-Hunter*, 806 F.3d at 493).

The ALJ also noted that Plaintiff drives, which he found "is a divided-attention task requiring memory and concentration. The claimant did not report any difficulty being aware of normal hazards and tak[ing] appropriate precautions, which would certainly arise while driving if she were limited in those areas." AR 29. To the extent Plaintiff alleged she could not concentrate to the extent required by work involving simple instructions, the ALJ reasonably found such an activity inconsistent with that testimony. Activities of daily living are a valid reason to discount Plaintiff's testimony if they are inconsistent with her symptomatic allegations. *See Orn v. Astrue*, 495, F.3d 623, 639 (9th Cir. 2007).

In sum, the ALJ provided specific, clear, and convincing reasons for rejecting Plaintiff's subjective symptom testimony.

## C.     Lay Witness Statement

Plaintiff contends the ALJ erred in assessing the lay witness statement of her daughter. *See* Dkt. 15 at 15–16; AR 422–27. Because the statement did not describe limitations beyond those described by Plaintiff herself, any error in assessing this statement is harmless. *See Molina v. Astrue*, 674 F.3d 1104, 1116–22 (9th Cir. 2012) (failure to provide germane reasons for rejecting lay witness statement is harmless if statement is cumulative of testimony properly rejected for reasons applicable to statement).

//

//

## IV. CONCLUSION

For the foregoing reasons, the Court hereby **AFFIRMS** Defendant's decision denying benefits.

Dated this 17th day of November, 2025.

                                                        David W. Christel
                                                      United States Magistrate Judge